# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

RICHARD BENNETT, et al.,           )
                                   )
                    Plaintiffs,    )
                                   )
v.                                 )          No. 09-6039-CV-SJ-FJG
                                   )
PHIL LAMMERS, et al.,              )
                                   )
                    Defendants.    )

## <u>ORDER</u>

Pending before the Court is defendants' Motion for Summary Judgment (Doc. No. 33).

## I.    BACKGROUND

Plaintiffs Richard Bennett and Bennett-Snook, LLC, allege four claims in their First Amended Complaint (Doc. No. 1-2): (I) Violation of Due Process under 42 U.S.C. §1983; (II) Defamation (as to Defendant John Carrolll); (III) Damage to Reputation under 42 U.S.C. §1983; and (IV) Inverse Condemnation.  Plaintiff Bennett alleges counts I, II, and III, and plaintiff Bennett-Snook LLC alleges count IV.  Plaintiffs filed the original complaint in the Circuit Court for Dekalb County, Missouri, and on April 14, 2009, defendants removed the case to this Court.

### A.    Parties

Defendant City of Cameron, Missouri, maintains a third-class city manager form of government pursuant to Mo. Rev. Stat. §72.030.  Defendant Lammers was Cameron's City Manager from December of 1990 until June of 2008.  Lammers appointed Bennett as the Fire Chief for the City of Cameron in 1996, and Bennett

served in this position until July of 2007.   As the City's appointed Fire Chief, Bennett did not have an employment contract.[1]  Defendant Carroll was the Superintendent of Water and Sewer Distribution for the City at all relevant times.

Plaintiff Bennett-Snook, LLC ("LLC") is a limited liability company organized under the laws of the state of Missouri with its principal place of business in Cameron, Missouri.  The LLC was owned by plaintiff Bennett and Steven Snook, who each held a fifty percent (50%) ownership interest.

### B.    Events Giving Rise to Cause of Action

In 2006, the LLC began planning a housing subdivision development in the City of Cameron named "Railroad Heights."  On July 5, 2007 Bennett was having trouble watering new sod on one of the unoccupied houses due to low water volume.  He contacted City Hall for assistance, and City Hall sent Carroll to assist Bennett.  Carroll installed a jumper (a "T" form pipe), which improved the water volume but left the water flowing to the unoccupied house unmetered.

The parties differ as to the understanding they reached with regard to the unmetered water.  Bennett denies that Carroll informed him that the water running to the house was unmetered; however, Bennett acknowledges Carroll told him that if he needed additional water Bennett would have to purchase another water meter.[2]

---

[1]Rev. Mo. Stat. §432.070 requires all contracts with public entities in the state of Missouri to be in writing.

[2]Bennett testified that after Carroll finished the installation he said, "Here's your house meter.  If you don't have enough water to water your sod, you'll have to go buy another meter and hook it to the meter loop on the house next door to finish watering the sod"  (Bennett Depo. at 23: 15-20).  Carrolll testified he told Bennett, "'[i]f you need[] to water anything off the house,' he [Bennett] was going to have to purchase another

On July 25, 2007, Carroll noticed water running along the curb at the unoccupied house where he assisted Bennett with the water flow problem. He found a garden hose connected to a spigot at the rear of the unoccupied house and noted this connection was unmetered. Carroll informed City Manager Lammers that the unoccupied house was receiving unmetered water.

### C.    Meetings with City Manager

On the afternoon of July 25, 2007, Lammers met with Bennett regarding use of the unmetered water. Also present at the meeting was Carroll and Mark Gaugh, who was the Director of Utilities for the City. The following exchanges took place, as described in Bennett's deposition:[3]

Q.    What did Phil Lammers say?

A.    "Richie, I'm disappointed in you."

Q.    As best you can, just tell me about what happened during the conversation.

A.    We sat down and he made that statement. And I said, "Oh, what's it about?" And he says, "It's about stealing city water." And I said, "I don't have a clue what you're talking about."

Q.    What happened next?

A.    John Carroll partially stood up and put his finger in my face and says [sic], "Oh, yes, you do. I told you that water in the house was not metered."

The meeting ended shortly thereafter without resolution.

---

yard watering meter, because the jumper in the meter was letting live water go through the jumper to the house that wasn't metered." (Carroll Depo. at 29: 4-9).

[3]Defendants do not dispute Bennett's recount of the meeting in his deposition (Doc. No. 34-1), and in Bennett's written summary of the July 25, 2007 meeting (Doc. No. 34-8).

Lammers met with Bennett the following day, July 26, 2007, where he told Bennett that he could resign or be terminated from his position as Fire Chief. Lammers had prepared a resignation letter for Bennett's signature. Bennett signed the resignation letter and left. Bennett returned to City Hall later in the day and attempted to rescind his resignation but Lammers refused to accept Bennett's rescission. On August 1, 2007, Bennett requested information concerning any appeal rights he may have. On August 6, 2007, Bennett attended a Cameron City Council meeting and asked them to investigate the basis for his resignation. Larry McCord, the Mayor of the City of Cameron in August 2007, testified that the City Council considered the matter and determined that it was within the City Manager's authority to terminate Bennett.

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine

whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. <u>Lower Brule</u>, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. <u>Id.</u> Rather, "the disputes must be outcome determinative under prevailing law." <u>Id.</u> (citations omitted).

## III. DISCUSSION

Counts I and III of plaintiffs' complaint allege claims under 42 U.S.C. § 1983. In count I Bennett claims his termination as Fire Chief violated procedural due process under the Fourteenth Amendment, and in count III he alleges defendants Lammers and Carroll damaged his reputation.

To establish a claim under § 1983, the plaintiff must prove the defendant has violated a constitutionally protected right, and the defendant was acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). To determine whether due process requirements apply in the first place, the court looks to see if the interest at stake is within the Fourteenth Amendment's protection of liberty and property. <u>Board of Regents v. State Colleges v. Roth</u>, 408 U.S. 564, 570-71 (1972).

### A. Count I: Violation of Procedural Due Process

Bennett alleges he was forced to resign, and, thus, was constructively terminated by the City of Cameron. He claims Rev. Mo. Stat. §78.360[4] grants him the right to

---

[4]All persons under civil service shall be subject to removal from office or employment by the council for misconduct or failure to perform their duties under such rules and regulations as it may adopt, and the chief of police, chief of the fire department or any superintendent or foreman in charge of municipal work may peremptorily suspend or discharge any subordinate then under his direction for neglect of duty or disobedience of his orders, but shall within twenty-four hours thereafter report such suspension or discharge and reason therefor to the

appeal his termination to the City Council. Bennet argues the Council did not fully hear and make a determination about Carroll's accusation of misconduct against him, and as a result, the City of Cameron and City Manager Lammers deprived Bennett of his procedural due process rights protected under the Fourteenth Amendment.

Defendants respond there is no due process violation because Bennett did not have a protected property interest in his position as Fire Chief. Bennett did not have an employment contract with the City, and cannot identify a statute that limits the City's ability to terminate him at will. Defendants refer to Rev. Mo. Stat. §78.600 as granting Lammers full authority to discharge Bennett. Section 78.600 states:

> The council shall appoint a city manager, a city clerk, city assessor and city treasurer; the offices of city clerk and city assessor may be filled by one person. All other officers and employees of the city shall be appointed and discharged by the city manager, the council to have power to make rules and regulations governing the same.

Defendants argue §78.360 does not grant appeal rights to a fire chief terminated by the city manager. Section 78.360 does not conflict with, or take away the city manager's authority under §78.600, and the city manager is simply not considered a "superintendent or foreman in charge of municipal work" under §78.360.

To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law. Hopkins v. Saunders 199 F.3d 968, 975 (8th Cir. 1999). For public employees, the inquiry is whether, under state law, the employee has

---

superintendent of his department, who shall thereupon affirm or revoke such discharge or suspension according to the facts. Such employee or the officer discharging or suspending him may within five days of such ruling appeal therefrom to the council, which shall fully hear and determine the matter. Rev. Mo. Stat. §78.360.

"a legitimate claim of entitlement" in continued employment, as opposed to a "unilateral expectation" or "an abstract need or desire" for it. <u>Roth</u>, 408 U.S. at 571. In Missouri, in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason, and in such cases, no action can be obtained for wrongful discharge. <u>State Ex rel Lukas v. City of Sikeston</u>, 668 S.W.2d 127, 132 (Mo. App. 1984)

The Court finds no violation of due process in the instant case. Despite Bennett's length of service as Fire Chief for the City of Cameron, he did not have a protected property interest in his employment. Bennett did not have an employment contract with the City for a fixed term, rather he was an appointee of the City Manager. Section 78.600 authorizes the city manager to discharge appointees without cause, and Lammers' exercised his authority in terminating Bennett in a manner consistent with the law. As to whether § 78.360 grants the fire chief the right to appeal removal, the Court finds it does not. A plain reading of § 78.360 indicates the provision applies to subordinate civil service employees, not city manager appointees. Without a protected property interest the procedural due process safeguards are inapplicable.

The Court finds defendants are entitled to judgment as a matter of law, and hereby **GRANTS** summary judgment as to Count I.

### B.    Count III: Damage to Reputation

Bennett's claim under 42 U.S.C. § 1983 is based on an alleged violation of his liberty interests protected by the Fourteenth Amendment. Bennett claims Lammers and Carroll defamed him in the course of the termination of his employment as Fire Chief.

Bennett's allegation is based on Lammers' and Carroll's statements at the July 25, 2007 meeting. *See supra* p. 2. He argues their accusations that he stole water were false and malicious, and as a result, Bennett's reputation among the community has been substantially damaged.

To establish such a claim, the employee must show defamation by a state official, and that the defamation occurred in the course of the termination of employment. Paul v. Davis, 424 U.S. 693, 710 (1976). Defamation, for purposes of a due process claim, occurs when a state official "publicly made allegedly untrue charges against [the employee] that would stigmatize [him] so as to seriously damage [his] standing and associations in [his] community, or foreclose [his] freedom to take advantage of other employment opportunities." Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993). For the plaintiff to prevail, he must show that the stigmatizing information was false and that the offending state entity made the information public. Seal v. Pryor, 670 F.2d 96, 99 (8th Cir. 1982).

At the outset, the Court notes that a constitutional claim for deprivation of liberty interest is more stringent than a common law defamation claim. The Court's threshold inquiry is whether the statements in question stigmatize Bennett to the extent that they "seriously damage [his] standing and associations" in the City of Cameron, "or foreclose [his] freedom to take advantage of other employment opportunities." Shands, 993 F.2d at 1347. Bennett has not set forth facts to support a claim that he was actually been stigmatized in his community, or had trouble securing employment as a result of Lammers' and Carroll's statements. This is because the defendants did not publicly

make their statements.  Instead, Lammers and Carroll spoke to defendant about the alleged misconduct in a private meeting of four city officials -Lammers, Bennett, Carroll, and Gaugh- and neither Lammers nor Carroll published the statements to outside parties.  Any damage to reputation that resulted from Bennett's own publication of him being accused of stealing water in the local newspaper and radio station cannot be imputed to defendants. The Court does not find the statements made by either Lammers or Carroll rise to the level of stigma that implicates a constitutionally protected liberty interest.

For these reasons the Court hereby **GRANTS** judgment as a matter of law in favor of defendants as to Count III.

## IV.     Conclusion

Accordingly, The Court hereby **GRANTS**  defendants' Motion for Summary Judgment as to **Counts I and III** (Doc. No. 33).   This case is hereby **REMANDED** to the Circuit Court of Dekalb County, Missouri for consideration of Counts II and IV.  The Clerk of the Court is directed to mail a certified copy of this Order to the Clerk of  the Circuit Court of Dekalb County, Missouri, as required by 28 U.S.C. § 1447©.


**IT IS SO ORDERED.**

Date:_  January 27, 2010                    **/s/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                        Fernando J. Gaitan, Jr.
                                             Chief United States District Judge